City of Chicago, et al., v. The People of the State of Illinois, ex rel. Dennis E. Byrne, et al.

### Gen. No. 11,130.

1. ANSWER—*when allegations of, taken as true.* Where in a mandamus proceeding the allegations of the answer are not denied by the replication, such allegations are taken as true.

2. CIVIL SERVICE ACT—*power of city to abolish offices.* While the Civil Service Act does not purport to confer upon the municipality the power to abolish or create offices, yet such powers are derived from other statutes not abrogated by such act.

3. CIVIL SERVICE ACT—*right to discharge employees under, without hearing.* Where the office filled by a civil service employee is, in good faith, abolished, such employee may be discharged without a hearing and cannot complain of any arrangement made by the city for the performance by others, already in the classified service, of the duties of such abolished office.

4. PUBLIC OFFICIAL—*when performance of duty by, will not be reviewed by the courts.* Where the performance of a duty by a public officer is discretionary and depends upon the exercise of his judgment, as to its necessity or propriety, the court will not interpose to determine how or when he shall exercise the power.

Mandamus proceeding. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1903. Reversed. Opinion filed May 17, 1904.

Statement by the Court. This was mandamus brought by the People at the relation of Dennis E. Byrne and eight others to compel appellants to reinstate them in their positions as timekeepers in the water pipe extension division of the city of Chicago, from which they claim to have been illegally discharged. The substance of relators' petition is that they passed a civil service examination for positions of timekeepers and were duly certified by the Civil Service

Commission to such positions in the water pipe extension division of the city of Chicago, and that thereafter they were assigned to duty with various gangs of workmen in that division, and received as compensation for their services the sum of $1,000 a year; that an appropriation has been made for the payment of these salaries by the city of Chicago; that they alone have qualified under the provisions of the Civil Service Act to fill such positions, and that they alone are entitled to hold them. They further allege that the superintendent of the water pipe extension division of the city of Chicago, under the direction of John Ericson, City Engineer, and F. W. Blocki, Commissioner of Public Works of said city, notified them in writing that their services would be dispensed with and that they were thereupon discharged; that the various foremen of the water pipe extension division were ordered to perform the work theretofore performed by them. They further recite their various duties, and allege that all of said duties were assigned to said foremen, notwithstanding the fact that they, the petitioners, were and are now ready to perform same; that the duties of said foremen, for which they were examined by said Civil Service Commission, have been and are wholly separate and different from the duties of timekeepers, and that said foremen have not been duly examined by said Civil Service Commission with reference to the performance of said duties, and that the city of Chicago and the other respondents named refused and still refuse to allow them to further hold said positions of timekeepers and to perform the duties thereof and receive compensation therefor; that there was no lack of relators' regular work for them to do and no lack of funds at appellants' disposal to pay relators, and that there was no other necessary cause for their discharge or the reduction of the force of employees in said department; that relators were not removed or discharged for cause upon written charges, and after an opportunity to be heard in their own defense, but on the contrary they were discharged without cause, without written charges and without trial or hearing. Then

follows a prayer for the writ of mandamus commanding appellants to re-employ and reinstate the relators in their said positions and to compensate them for the performance of the duties thereof.

In their answer appellants admit that relators passed a civil service examination for the position of timekeepers and were appointed thereto and held the same until the time alleged in the petition. The answer next alleges that for purposes of economy, and because said positions were no longer necessary, and for the purpose of saving the cost and expense thereof, appellants abolished said positions and solely for the reasons aforesaid discharged relators; that such of their acts and employments as were necessary thereafter to be performed were divided up and added to the duties of various other employees of the city of Chicago without additional expense to it, and that no other persons have been appointed or assigned to said positions.

In their reply to the answer, relators deny that " their positions as timekeepers were abolished and they were discharged for the purposes of economy and for the purpose of saving the cost and expense thereof, and because said positions were no longer necessary: and they further deny that said positions were no longer necessary, that their abolishment served the purposes of economy and that respondents had any legal right to abolish said positions."

The court found in favor of relators and ordered the writ of mandamus to issue as prayed. From this order respondents appeal.

Charles M. Walker, Corporation Counsel, Colin C. H. Fyffe and Frank Johnston, Jr., Assistants Corporation Counsel, for appellants.

Ball & Lunsford, for appellees.

Mr. Justice Stein delivered the opinion of the court.

Before entering upon the consideration of the questions of law involved in this appeal, it becomes of importance to determine precisely the issues of fact arising upon the pleadings.

Expressly or by failure to deny, the answer admits all the allegations of the petition touching the civil service examination of relators, their appointment under the provisions of the Civil Service Act to the positions of timekeepers and the holding the same from some time in 1898 until August 19, 1902, their receiving each as compensation for his services the sum of $1,000 a year, and the making of an appropriation by the city for the payment of their salaries for the year 1902. But in respect to the mode in which relators were discharged from the employment of the city, the answer tenders a new affirmative issue by the averment that the respondents abolished the positions held by relators for purposes of economy and because they were no longer necessary and to save the cost and expense thereof. The reply to the answer admits in effect that the positions were abolished, but denies that they were abolished for the reasons alleged by respondents. Relators also deny that "said positions were no longer necessary." In so far as the reply questions—if it does question—the good faith of respondents in abolishing the positions, it presents an issue that is material; but in denying that they were no longer necessary or (what is the same thing) averring that they still were necessary, an issue was raised which—as will be shown hereafter—was wholly immaterial. As the reply did not deny the allegation of the answer that the positions had been abolished (which was equivalent to an admission that they had been, People v. Commissioners, 180 Ill. 160, 162; Mayor of Roodhouse v. Briggs, 194 Ill. 435), it was not necessary for appellants to submit any proof in that behalf. Upon cross-examination of F. W. Blocki, a witness for relators, it did, however, appear that the positions had been abolished.

In view of this condition of the pleadings and the failure of relators to discuss or in any way mention in their brief and argument the question of the power of the city of Chicago to abolish the positions held by them, we would be justified in assuming that they concede the existence of the power notwithstanding the attempt made by

City of Chicago v. The People.

them in their reply (and not by a demurrer) to raise an issue of law by denying "that respondents had any legal right to abolish said positions." The question, however, is of such importance as to deserve and indeed require an examination at our hands.

All citizens who have the welfare of their country at heart and are influenced by no other considerations, are agreed that the Civil Service Act makes for good government. It substitutes for the uncontrolled will of the appointing officer the results of the competitive examinations prescribed by it and requires him to select for the office or position to be filled the man who has shown himself to be best qualified for it. For these very reasons care must be taken that no abuses creep in under cover of the law which would impair its efficiency or if countenanced and permitted might lead to its repeal. A construction of the act which would leave a municipality after having once created a position powerless to abolish it in spite of the most urgent necessity therefor, should not be adopted unless the act declares the inhibition in express terms or by necessary implication. A city may decrease in size and population and an office become wholly unnecessary, or it may be short in funds and unable to pay for the service. Shall it be said that the civil service law was intended to foster one great pension establishment in which to quarter a host of sinecures? Happily, a reading of the entire act shows that such was not the intention of its framers. It does not purport either to deprive the city of the power to abolish an office or to invest it therewith. Such power the city derives from other statutes which were not abrogated by the Civil Service Act. Its provisions relate principally to the persons who are to occupy the offices and to the manner of selecting them, but not to the positions themselves. The act does not expressly or impliedly vest the Civil Service Commission with the power to abolish or create offices or even to appoint officers. It was not intended to abrogate or curtail in any respect the power of a municipality to abolish offices, but only to qualify and restrict the power of appointment in the manner provided.

It remains to be determined whether the power to abolish the positions of relators was exercised, first, in a legal manner, and second, in good faith.

Under the first head the inquiry is, can the city abolish municipal positions coming within the classified service of the Civil Service Act without a hearing, in pursuance of section 12, which provides that "no officer or employee in the classified civil service of any city who shall have been appointed under said rules and after said examination shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense." It is admitted that relators were discharged without a hearing and that no charges were preferred against them.

As stated by our Supreme Court in People v. Kipley, 171 Ill. 44, "statutes of the same kind have also been adopted in the states of Massachusetts and New York," and under the New York law which forbids the removal of a regular clerk or head of a bureau "until he has been informed of the cause of the proposed removal and has been allowed an opportunity of making an explanation," it is firmly established that the person discharged is not entitled to a hearing where the position has been abolished in good faith and for economical or other substantial reasons. In Phillips v. Mayor, 88 N. Y. 245, the Court of Appeals said (p. 247): "The object of this provision was to prevent removal except for cause, and then only at a hearing or an opportunity for a hearing. The purpose of a hearing was to enable the clerk or officer proceeded against to satisfy the body or officer having power of removal that he should be retained. The provision has no application to a case like this. This is not, properly speaking, a case of removal within the meaning of the statute. Here the office or clerkship was abrogated and there was no more need of plaintiff's services. He could not claim that the office or clerkship should be retained for his benefit, and the fire commissioners were not obliged to consult him before abrogating it. And further, the statute does not apply to a case like this, where

City of Chicago v. The People.

the officer is removed, not to make way for another, but because his services are no longer needed or because there are no funds provided for his payment. The plain purpose of the statute does not reach such a case."

In People ex rel. Moloney v. Waring, 7 App. Div. (N. Y.) 204, a city employee was discharged because "his services were not needed." No charges were preferred against him and no hearing was had under the provision of the statute providing for such in case of removals. The Supreme Court said (page 206): "The ground of his discharge was not such as to bring his case within the statutory requirement, which prohibits removal except for cause shown and after a hearing. * * * The statute must receive a reasonable construction and plainly refers to that class of removals which are predicated upon the personal conduct of the employee. In such cases it is obviously reasonable that the person proceeded against should be offered an opportunity of vindicating himself against charges imputing his conduct or delinquencies in the performance of his duties. But where the discharge is contemplated without any imputation upon the employee and solely on the ground of economy in the public service, it would be highly absurd to gravely notify him that he is to be removed * * * because of some rearrangement of the force of the department which renders the employment of so many men unnecessary, and to invite a discussion of this matter between the head of the department and his subordinate."

In Langdon v. Mayor, 92 N. Y. 427, a regular clerk in the finance department of the city of New York was removed without a hearing because his services were not needed. The Court of Appeals said: "That limitation does not apply to a case like this. * * * Here the business of the department had so diminished that the plaintiff's services were not needed. For such cause the Comptroller had the absolute power of removal, without any previous trial, hearing or notice, and hence the judgment should be affirmed with costs."

In Lethbridge v. Mayor, 133 N. Y. 232, the Court of

Appeals said (page 237): "The provision of the statute giving a clerk or officer the right to a hearing and an opportunity to make an explanation is wholly inapplicable to a case where the removal was made for the reason that the appropriation applicable to the payment of the salary had been expended. The right to make an explanation in such cases necessarily implies that the cause of removal is some dereliction or general neglect of duty or incapacity to perform the duties, or some delinquency affecting his general character and his fitness for the office or place. The provision has no application to a case where the incumbent was dismissed for want of funds or in order to reduce expenses and when at the time of the dismissal he had notice of that fact."

And in Matter of Kenney v. Kane, 27 Misc. (N. Y.), p. 680, it was said by the Supreme Court of New York: "To give an employee an opportunity to make an explanation when there is nothing to explain would be an idle ceremony. In analogous cases it has repeatedly been held that a person protected by statutes similar to that of 1898 might be removed without a hearing where the cause for removal was not an alleged dereliction or unfitness, but some reason which no explanation could remove, such as an exhaustion of appropriation and abolishing of an office, or the devolution of the duties of an office upon some other person already holding another position."

Similar rulings were made in People ex rel. Corrigan v. Mayor, 149 N. Y. 215; People ex rel. Traphagen, 13 App. Div. (N. Y.) 400; People ex rel. Hartough v. Scannell, 48 App. Div. (N. Y.) 445; Oldham v. Mayor, 102 Ala. 357. We regard the reasoning of the above decisions as resting on sound statutory interpretation. The power to abolish an office is wholly different from the power to discharge the incumbent. When an office is abolished, there is strictly and accurately speaking no discharge of the person holding it. The office simply ceases to exist, and the abolishment is directed not to the person, but to the office. The mere fact that the person incidentally loses his position does not

City of Chicago v. The People.

entitle him to a hearing in the sense and meaning of the statute.

The relators insist that their positions were not abolished in good faith and that the city authorities acted unreasonably and arbitrarily in the premises; that their real object was not to abolish the positions, but to get rid of relators as timekeepers, and that the positions were abolished in name only, as in City of Chicago v. Luthardt, 191 Ill. 516. This is a question of fact to be determined from the proof. It appears that on August 18, 1902, John Ericson, city engineer, sent the following letter to James Wallace, superintendent of the water pipe extension department:

"In accordance with the recommendation of Haskins & Sells, whereby they claim that the services of certain timekeepers in your division can be dispensed with and the work performed without their aid, the Commissioner of Public Works directs that you dispense with the services of the eight timekeepers at once. Please issue the necessary instructions to the foremen of the various divisions that they will be obliged to keep track of the time of the men and of the work performed daily and make out daily reports and do such other work as has been heretofore performed by the timekeepers."

Mr. Wallace thereupon wrote to John Powell, foreman of the first district, as follows:

"I am instructed by the city engineer, through an order of the Commissioner of Public Works, to inform you that the services of the timekeepers in the Water Pipe Extension Division have been dispensed with and the work heretofore performed by them is to be done by the foremen of the respective districts. That is, the time of the men is to be kept, a record of the work performed each day and the daily reports made out, together with such other work as has heretofore been performed by the timekeepers. You will please be governed accordingly."

Mr. Wallace also wrote to each of relators as follows:

"In accordance with the recommendation of Haskins & Sells, who claim that the services of timekeepers in the Water Pipe Extension Division can be done away with and the work performed without their aid, I am instructed by the city engineer, through an order of the Commissioner of Public Works, to dispense with your services at once."

Haskins & Sells mentioned in the letters were a firm of experts in municipal bookkeeping and accounting who had entered into a contract with the city to introduce a modern and comprehensive system of accounting in the administration of the government and the conduct of the finances and affairs of the city in all its departments, bureaus and offices with a view to greater efficiency and economy. If Haskins & Sells saved the city $25,000 a year they were to receive a certain compensation, and they agreed to forfeit $2,000 for every $1,000 of the $25,000 they failed to save. Acting under the authority of their contract, Haskins & Sells recommended that the positions of relators as timekeepers be dispensed with on the ground that they were not required in the public interest, and the city authorities adopted and acted upon the recommendation.

The proof shows—and it is not denied—that the discharge of relators was simply a reduction in the force of employees. As the city commissioner of public works, called by appellees, testified : " The purpose of laying these men off in my official action was retrenchment recommended by Haskins & Sells." Others were not selected to take their places. The work which they had done devolved upon the foremen of the several districts in which they had been employed, and upon laborers not in the classified service; but the compensation of neither was increased. There is no testimony tending to show bad faith or unreasonable or arbitrary action on the part of the city authorities unless such elements are made to appear, as appellees contend, from the fact that in the opinion of the commissioner of public works and some other officers of the city the discharge of relators operated to the detriment of the service. In other words, these officers did not agree with Haskins & Sells, to whom the city as such, and acting by its supreme and authorized officers, had left it to determine what changes should be made in the public service. Possibly the commissioner was right and Haskins & Sells wrong; but that is not the question. We are convinced from the proof that Haskins & Sells, through their Chicago representatives, carried out fairly

and honestly their contract with the city so far as the interests of the relators are concerned, notwithstanding the clause assailed by counsel that Haskins & Sells should forfeit a part of their compensation in a certain contingency, thereby making it an object to them to recommend a reduction of the expenses of the city to the lowest possible amount.

Much testimony was heard upon the question whether in point of fact a saving was effected by the discharge of relators and whether it was wise and expedient to discharge them; the purpose being to show that their positions should have been retained for the public good. This was an immaterial issue. It may have been a mistake and not calculated to promote economy for the city to let the foremen and others do the work formerly done by the timekeepers; but with such matters courts have nothing to do. The question for the court to decide is not whether the judgment of the city authorities was sound or correct, but whether their motives in ordering a change were proper. The action involved the exercise of judgment and discretion and is not subject to review by the courts except to determine whether there was or was not good faith and a reasonable exercise of discretion. Otherwise the affairs of the city would be managed, not by the officers chosen for the purpose, but by the courts.

Where the performance of a duty by a public officer is discretionary and depends upon the exercise of his judgment as to its necessity or propriety, the court will not interpose to determine how or when he shall exercise the power. County of St. Clair v. The People, 85 Ill. 396; People v. Dental Examiners, 110 Ill. 180; Harrison v. The People, 101 Ill. App. 224; Ackerly v. Jersey City, 54 N. J. L. 310; People ex rel. Nutall v. Simis, 18 App. Div. (N. Y.) 199.

It is also argued that the turning over of part of the work done by relators to laborers not in the classified service is a violation of the civil service law. If such be the case (as to which we do not feel called upon to express an opinion), the wrong should be remedied by some appropri-

ate proceeding. The relators are not the proper parties to raise the question. If the abolishment of their positions was a valid act (as we hold it to be), they are not interested in any arrangement the city may have made for the performance by others of the duties of the abolished positions. People ex rel. Moloney v. Waring, *supra;* People ex rel. Nutall v. Simis, *supra;* People ex rel. Corrigan v. Mayor, *supra;* People ex rel. Hartough v. Scannell, *supra.*

The judgment of the Circuit Court is reversed with a finding of facts.

*Reversed.*