People of State of Illinois, Defendant in Error, v. Joseph Niewinski and Markus Svendsen, Plaintiffs in Error.

Gen. No. 46,976.

First District, Second Division.

April 9, 1957.

Released for publication May 21, 1957.

■■■■■■■■■■

Coghlan & Coghlan, of Chicago (John P. Coghlan, and John E. Toomey, both of Chicago, of counsel) for plaintiffs in error.

Benjamin S. Adamowski, State's Attorney of Cook county, of Chicago (Gordon Nash, and William Sylvester White, Assistant State's Attorneys, of Chicago, of counsel) for defendant in error.

JUDGE McCORMICK delivered the opinion of the court.

Joseph Niewinski and Markus Svendsen, police officers of the City of Chicago, were indicted under Section 9—92 of the Cities and Villages Act (chap. 24, par. 9—92, Ill. Rev. Stat. 1953) and tried before a jury and found guilty. They were each fined $500 and removed from their positions as officers and policemen of the city of Chicago. Motions for a new trial and arrest of judgment were overruled, and plaintiffs in error sued out this writ of error to review the judgment of the court.

The matter is submitted to this court on a stipulation entered into between the State's Attorney of Cook County and the plaintiffs in error (hereafter referred to as defendants), through their attorneys. In the stipulation appears the following paragraph:

"The sole question presented for review is the claim of the defendants that section 9—92 (chap. 24, Par. 9—92, Ill. Rev. Stats. 1953) making removal from office mandatory on a finding of guilty, can apply only to elective and appointive officers and is repugnant to section 12, (Chap. 24½, Par. 51 Ill. Rev. Stats. 1953)

310

governing removal of persons appointed under Civil Service." .

The stipulation also sets out that the two defendants were originally indicted on two counts, count one charging a violation under section 208 of the Criminal Code (chap. 38, par. 449, Ill. Rev. Stat. 1953), and count two charging a violation under the Cities and Villages Act. At the conclusion of all the evidence the State's Attorney was allowed by the court to dismiss count one. Count two in substance set out that the defendants, officers and policemen of the city of Chicago, on December 28, 1953 verbally and maliciously threatened to accuse one Robert Frederickson of the crime of selling liquor to minors, with the intent of extorting from him the sum of $500, and that the defendants were guilty of malconduct.

An abstract of the evidence is also set out in the stipulation, and is to the effect that the defendant Niewinski talked to Frederickson by telephone from the tavern of which Frederickson was the manager and told him there had been a minor in the tavern, that he (Frederickson) was in serious trouble and should come down to the tavern at once and bring some money with him to straighten things out. Frederickson thereupon came to the tavern, and the defendants told him that if he paid $500 the matter would be forgotten. Frederickson said he could not get that much money and the defendants then went with Frederickson to the police station to which they were assigned. They again talked to him there, and he told them he could get $100 that night which he would give them and would pay $200 the following night. The offer was accepted. Frederickson obtained and gave them $98. The defendants failed to return for the $200 the next night. On a showup Frederickson identified the two defendants as the officers who obtained the money from him. They denied the charge.

311

■ Under the stipulation no question is here raised concerning the conduct of the trial of the defendants, nor is it disputed that they were guilty of the misdemeanor for which they were tried and convicted. There are only two questions presented to us for determination: first, Did section 9—92 of the Cities and Villages Act apply to police officers? and second, Was that portion of the section which made removal from office mandatory on a finding of guilty repugnant to section 12 of the City Civil Service Act?

Section 92, article 9, of the Cities and Villages Act (par. 9—92, chap. 24, Ill. Rev. Stat. 1953), provides:

"Every municipal officer who is guilty of a palpable omission of duty, or who is guilty of willful and corrupt oppression, malconduct, or misfeasance in the discharge of the duties of his office, shall be liable to indictment in any court of competent jurisdiction and, on conviction, shall be fined not exceeding $1,000. The court in which such conviction is had shall enter an order removing the convicted officer from office."

The defendants in their reply brief admit they were either *de facto* or *de jure* officers of the city. That being so, they fall within the scope of section 92, article 9, of the Cities and Villages Act dealing with "every municipal officer." The defendants, however, strenuously urge that notwithstanding the fact they are *de facto* or *de jure* officers they do not come within the purview of the mandatory clause of the above section since they are civil service employees, whose removal is governed by section 12 of the City Civil Service Act (par. 51, chap. 24½, Ill. Rev. Stat. 1953), which provides:

". . . No officer or employee in the classified civil service of any city who shall have been appointed . . . shall be removed or discharged except for cause; upon written charges and after an opportunity to be heard in his own defense."

 It is well established law that where there is no constitutional limitation involved the legislature has complete control over all offices created by statute. The length of term and mode of appointment may be altered at pleasure, and the office may be abolished and compensation taken away from the incumbent. Groves v. Board of Education, 367 Ill. 91. In People v. Kipley, 171 Ill. 44, in passing on the constitutionality of the Act to Regulate the Civil Service of Cities, the court discusses the philosophy underlying the enactment of such laws, and points out that their purpose is to do away with the "spoils system," to improve the efficiency of employees coming within their scope, and to establish a system under which the right to employment and promotion is determined according to merit and fitness based upon competitive examinations free to all. The court says:

"A public office is not property, nor are the prospective fees of an office the property of its incumbent. An office is a mere right to exercise a public function or employment. It is not the subject of sale, purchase or incumbrance. The term 'office' implies a delegation of a portion of the sovereign power of the government to the person filling the office. Its duties are to be performed for the benefit of the public and in the public interest. (19 Am. & Eng. Ency. of Law, 381, 382)."

The court points out that the right of an incumbent in office is not based upon a contract or grant, but that such office is conferred upon him as a public trust to be exercised for the benefit of the public, and that the legislature has the power, within constitutional limitations, to control the municipalities created by it and may direct how municipal officers may be elected or appointed by the cities and villages in the state and how such officers shall be removed.

313

It is true that the Civil Service Act does make certain provisions with reference to tenure of office. These provisions, however, are subordinate to the main purpose of the Act. The reason for the existence of civil service laws is a protection of the public and in carrying out that purpose they protect civil service employees. A civil service employee is not awarded a life tenure in office. The jurisdiction of the civil service commission is limited, and any authority claimed by it must be conferred upon it by statute. People ex rel. Hurley v. Graber, 405 Ill. 331. In construing a statute the court must ascertain and give effect to the intention of the legislature, which is to be gathered from the necessity or reason for the enactment and the meaning of the words, enlarged or restricted according to their real intent. In determining this intent the court must consider the existing circumstances, contemporaneous conditions and object sought to be attained by the statute, together with the language used by the legislature and the evil to be remedied. Petterson v. City of Naperville, 9 Ill.2d 233. The provision in the Civil Service Act that no person employed in the classified service of the city can be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense, must be given a reasonable meaning. Considering the statute, as we must, in the light of the stated and generally accepted purpose underlying the institution of civil service in municipalities, the fundamental reason for the enactment of this provision dealing with tenure of office is for the benefit and protection of the public. Without this restriction upon the removal of civil service employees a workable civil service could not be maintained, and we would be confronted with the very abuses which the civil service laws were intended to prevent: the removal of employees for political or other reasons at the whim of

314

department heads or civil service commissions without any regard as to whether or not the performance of the incumbent in his office warranted dismissal either without making any charges or permitting him on a hearing to vindicate himself against such charges as are made. It has been repeatedly held that in spite of this prohibition an office or employment held under civil service may be abolished and the incumbent removed without any right to the preferring of·charges against him or a hearing before the civil service commission. City of Chicago v. People ex rel. Byrne, 114 Ill. App. 145.

In the case before us we must assume, since no objection is here urged, that the defendants were afforded a fair trial and that the evidence in the case was sufficient to convict them of the offense charged. The statute under which they were tried provided that if they were found guilty of malconduct as officers it was mandatory upon the court to remove them from office. It would ·be unreasonable to assume that the legislature, in providing in the Civil Service Act that no civil service employee could be removed or discharged without written charges and a hearing before the civil service commission, meant that if such employee had been convicted in the criminal court of conduct in utter disregard of his duty to the public under a statute requiring the court upon such conviction to remove him, it would still be necessary for a further and additional hearing to be held before the civil service commission. As was said in Matter of Kenny v. Kane, 27 Misc. 680, 59 N.Y.S. 555: "To give an employee an opportunity to make an explanation when there is nothing to explain would be an idle ceremony." The law does not require the doing of unnecessary things.

As we said in Martin v. Civil Service Commission, 7 Ill.App.2d 128:

315

"The problem of proper discipline, morale and law enforcement by the Police Department is one directly affecting the administration of justice. The police have the responsibility of apprehending those who violate the law and assisting in the preparation of the cases that are to be brought before the courts for trial. A corrupt and dishonest police officer can persecute the honest and assist the guilty to avoid prosecution. As a result of such dishonesty and corruption, all who are connected with the administration of justice can be brought into disrepute. In this the people of the community and all those connected with the administration of justice are vitally interested."

It is the duty of a police officer to protect the citizens of his community and not to prey upon them. ▮ We can find no force in the argument that the cited provision of the Civil Service Act is repugnant to the mandatory provision of the Cities and Villages Act. They are mutually exclusive.

Furthermore it may be noted that the Civil Service Act relating to cities and containing the clause above referred to has been in force in this State since 1895. The revised Cities and Villages Act was with some minor changes re-enacted in 1941. It must be assumed that the legislature knew of the provision contained in the Civil Service Act, and by passing the revised Cities and Villages Act in 1941 their intent was to limit the application of the restrictive clause in the Civil Service Act so that it did not include the provision under which the defendants were convicted. The argument of the defendants that they should not have been tried under section 9—92 of the Cities and Villages Act, but under some other statutory provision, is outside the scope of the stipulation and will not be considered. To say that after a proper conviction of the defendant police officers of such conduct as was set out in the stipulation it would be necessary, before they could

316

be removed from their positions, to go through the meaningless formula of a filing of charges and a hearing before the civil service commission is not in accord with commonly accepted rules of law or reason; and it is repugnant to the judicial conscience to say that a person, after conviction of such an offense, is still entitled to remain as an officer of the police department. It may reasonably be assumed that this was within the consideration of the legislature when it passed the revised Cities and Villages Act in 1941.

The judgment of the Criminal Court of Cook county is affirmed.

Judgment affirmed.

ROBSON, P. J. and SCHWARTZ, J., concur.