People of the State of Illinois, Plaintiff-Appellant, v. Joseph L. Gill, Defendant-Appellee.

Gen. No. 48,121–48,127.

First District, Third Division.
March 22, 1961.

Benjamin S. Adamowski, State's Attorney, of Cook county, Illinois (Francis X. Riley and James R. Thompson, Assistant State's Attorneys, of counsel) for appellant.

Jacob Shamberg, of Chicago, for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Ten indictments returned against the defendant, Joseph L. Gill, were quashed by the Criminal Court of Cook County. Appeals in seven of these cases were taken by the State. They have been consolidated in this court.

The seven indictments charged the defendant, who was the Clerk of the Municipal Court of Chicago, with palpable omission of duties imposed upon him by the statutes of Illinois. The indictments fall into two categories. In five of them he is charged with having failed to forward to the Secretary of State, within three days after conviction in the Municipal Court, the reports of the conviction of five defendants for driving while intoxicated; they differ only as to the name of the individual defendant and the date of his conviction. The other two indictments charge that he failed to preserve certain quasi-criminal complaints (commonly called traffic tickets) turned over to him by the Chicago Police Department; they differ only in that one indictment contains a list of 27 quasi-criminal complaints and the other a list of 61.

The motions to quash attacked the indictments upon certain grounds common to all of them and attacked those in each category upon grounds peculiar to that group. The defendant's brief in this court generally follows his motions to quash, but some of the points made in the brief were waived in oral ar-

35

gument. We shall consider first the points pertaining to each category.

In the indictments of the first category the duty referred to arises under the Motor Vehicle Law of Illinois. This act provides that the Secretary of State shall revoke the license of an operator of a motor vehicle upon receiving a report of the operator's conviction for driving while under the influence of intoxicating liquor. Ill. Rev. Stat., ch. 95–½, sec. 6–205 (a)2 (1959). For the purpose of furnishing the Secretary of State with the record essential to the performance of his responsibility, the law provides that whenever any person is convicted of that offense, the judge shall require the surrender of the driver's license and the clerk of the court shall, within three days thereafter, forward the license and the report of such conviction to the Secretary of State. Section 6–204(a)1. Another paragraph of the same section, 6–204(a)2, provides that a report of a conviction for any offense under the act, or the Uniform Act Regulating Traffic on Highways, shall be forwarded to the Secretary of State by the clerk of the court within three days after the conviction.

█ There appears to be an ambiguity in paragraph 6–204(a)1 and a conflict between this paragraph and 6–204(a)2. The word "thereafter" in paragraph 6–204(a)1 relates to the surrender of the driver's license. The obligation placed upon the clerk by this paragraph is to forward the report of conviction and the license within three days after the judge orders the surrender of the driver's license. If a driver did not have his license with him at the time of his conviction or if it were lost, or if some other delay in its surrender ensued, there could be a difference in time between his conviction and the surrender of his license. This paragraph does not make it clear whether, if the license is unavailable, the

clerk would still be obligated to send the report of conviction within three days. On the other hand, paragraph 6–204(a)2 says that a report of a conviction for *any* offense under the act must be sent within three days. This would, according to the same paragraph, include many traffic offenses under the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat., ch. 95–½, sec. 98 et seq. (1959)).

It would be an unreasonable interpretation of the law if we held that it demanded greater promptness in forwarding reports of convictions for relatively minor offenses than for reports of convictions for major offenses for which revocation of driver licenses is mandatory, such as reckless homicide, the commission of a felony in which a motor vehicle is used, or driving while under the influence of liquor. A study of chapter 6 of the Motor Vehicle Law leads to the conclusion that it was the intention of the legislature to have the clerk, in cases under section 6–204(a)1 as well as in cases under section 6–204(a)2, send the conviction reports to the Secretary of State within three days after conviction.

The study of chapter 6 also produces the answer to the defendant's contention that the three day requirement is not mandatory. The defendant acknowledges that the clerk's duty to send the reports is imperative but argues that the time within which he must do so is merely directory. The statute says that the reports *shall* be forwarded within three days. The use of the word *shall* indicates a peremptory directive. However, our courts sometimes have construed *shall* as meaning *may*. It is necessary, therefore, to examine the entire chapter to ascertain in which sense the word was intended by the legislature. The words *may* and *shall* are used throughout the chapter. Wherever they are employed their use is

distinctive and their meaning well-defined. In every instance *may* is permissive, *shall* is compulsory.

The aim of statutory construction, however, is to ascertain the legislative intent by examining not only the language employed, but the evil to be remedied and the objective sought to be accomplished. Schoellkopf v. DeVry, 366 Ill. 39, 7 N.E.2d 757; People v. LaPorte, 28 Ill. App. 2d 139, 171 N.E.2d 95; People v. Niewinski, 13 Ill. App. 2d 307, 142 N.E.2d 151. When we examine chapter 6 with this purpose in mind the sense in which *shall* was used in sections 6–204(a)1 and 6–204(a)2 again becomes manifest. The tone of the chapter suggests urgency. It is evident that the legislature wanted Illinois highways cleared as quickly as possible of drivers whose records showed them to be a menace to the safety of others. To this end, the Secretary of State is instructed to act with celerity and certainty in enforcing the provisions relating to the abuse of driving privileges. Without records which are current and accurate he could not possibly perform the responsibility placed upon him. It is clear that promptness in forwarding conviction reports is essential to the enforcement of the law and that the legislature meant the three day requirement to be mandatory.

The defendant's next point is that the indictments are faulty in that they do not allege that a form for the reports of conviction has been prescribed by the Secretary of State. This point is predicated upon section 6–211(b) which says, "The Secretary of State shall either provide or prescribe suitable forms requisite or deemed necessary by him for the purposes of this chapter." It is interesting to observe that, if this point is to have any merit, the obligation of the Secretary to provide forms must be considered mandatory and the word *shall* must

be so interpreted. However, it is not necessary to consider the acknowledged mandatory nature of the obligation. An allegation about forms being prescribed is not requisite to the offense charged in the indictments. The defendant is charged with failing to report the convictions, not with failing to report them on forms prescribed by the Secretary of State. If no forms were provided by the Secretary, as the statute directs, and if the defendant did not forward the reports for this reason, this could well be urged in defense. But the validity of the indictments is not impaired because the forms are not mentioned.

■ The requirement of section 6–204(a)1 that drivers licenses be sent to the Secretary within three days is the last point concerning the indictments of the first category. The indictments do not refer to these licenses and it is deduced from this that the defendant did in fact forward them to the Secretary within three days and that the Secretary, therefore, really had notice of the convictions. The following are quotations from the defendant's brief:

> "We may presume that the judge or judges, as the case may be, required surrender of the drivers licenses for the persons named in the five indictments.

> "And we may presume that the defendant as a public official, did his duty and forwarded these surrendered licenses within 3 days. There is nothing in the record anywhere to refute this presumption.

> "Since on the record, these surrendered licenses were forwarded to the Secretary of State, he was aware of the convictions of the persons involved through receipt of these licenses from the defendant clerk. The Secretary of State was not

39

without notice of the convictions even though he may not have had the formal reports."

The syllogism which flows from these presumptions is this: in order to establish a palpable omission of duty the State must show that there was a substantial failure on the part of the defendant to perform that duty; there has been no substantial failure to perform a duty; therefore, there has been no palpable omission of duty (and the indictments are defective in so charging). This reasoning is more substantial than the presumptions upon which it is based. The presumptions themselves are founded on an insecure premise. The primary premise is that the indictments do not mention that the defendant failed to forward the licenses. It cannot be presumed, just because of this, that the licenses were forwarded. It is more logical to presume that if the conviction reports were not sent neither were the licenses. If the licenses were actually sent this would be a matter of defense, to be introduced to bolster the argument of substantial compliance. The indictments are not defective because no reference is made to the licenses.

In the indictments of the second category the duty referred to arises under section 13 of the Clerks of Courts Act which makes it the responsibility of court clerks to preserve all the files and papers of their courts. Ill. Rev. Stat., ch. 25, sec. 13 (1959). The Municipal Court Clerk is included within this provision by section 14 of the Municipal Court of Chicago Act (Ill. Rev. Stat., ch. 37, para. 369 (1959)) which says that the duties of the Clerk of the Municipal Court shall be the same as those prescribed for the clerks of other courts by the Clerks of Courts Act.

The main argument directed against the second category indictments is that they do not show a sub-

stantial failure of duty on the part of the defendant. This argument parallels the one we have just considered about the indictments of the first category. It is said the indictments charge the nonpreservation of only 27 and 61 complaints, respectively, out of millions filed in the Municipal Court. Further, it is said that these complaints have several copies and are easily replaceable. It must be remembered that we are reviewing an order sustaining motions to quash, not a judgment following a conviction. We cannot evaluate factual averments which do not appear in the record and are not appropriate to this appeal. The defendant's resourceful attorney has bombarded the indictments with many and varied objections. But this one, as well as some of the others, would be more suitable to the presentation of the defendant's case upon a trial.

█ The last and somewhat subordinate point is that the indictments do not give the defendant enough information to prepare his defense. The quasi-criminal complaints are identified in the indictments by their serial numbers. The dates the complaints were filed, the defendants named in them and the dates of the traffic violations are not given. While this is not the best kind of pleading we do not believe the indictments are subject to a motion to quash on that account; the serial numbers adequately identify the missing complaints. If the defendant desires a motion for a bill of particulars can produce additional information; however, it appears that such a motion will be unnecessary in view of his previous assertion that copies of the complaints are available.

There are two general points. The first of these was termed a "threshold problem" by the trial judge. It is kindred to all the indictments and was the principal reason why the motions to quash were sustained.

41

After describing each offense with adequate clarity and detail, the indictments conclude with words such as these: " . . . the said Joseph L. Gill . . . is guilty of a palpable omission of his official duty contrary to Statute and against the peace and dignity of the same people of the State of Illinois." In no instance is the statute specified under which the indictment is brought and the penalty sought. The State, in its answer to the defendant's motions and in response to questions of the court, said it was proceeding under section 9–92 of the Cities and Villages Act. The trial court held that the defendant could not be indicted under that Act because he was not a municipal officer subject to the provisions of that Act.

The State retains its viewpoint in this court, while the defendant asserts the indictment must be considered as being brought under section 208 of the Criminal Code. (His espousal of this section of the Criminal Code is fleeting, however, as will be seen later.) The two statutes follow:

> "Every municipal officer who is guilty of a palpable omission of duty . . . shall be liable to indictment in any court of competent jurisdiction and, on conviction, shall be fined not exceeding $1,000. The court in which such conviction is had shall enter an order removing the convicted officer from office." Ill. Rev. Stat., Cities and Villages Act, ch. 24, sec. 9–92 (1959).

> "Every person holding any public office (whether state, county or municipal), trust or employment, who shall be guilty of any palpable omission of duty . . . where no special provision shall have been made for the punishment thereof, shall be fined not exceeding $10,000, and may be removed from his office, trust or employment." Ill. Rev.

42

Stat., Criminal Code, sec. 208, ch. 38, para. 449 (1959).

██ ██ Both of these statutes impose penalties for the omission of duties defined in other statutes. The indictments are not deficient because the statutes are not specified. They follow the language of the statutes and aver facts constituting violations of those statutes. Where indictments are otherwise properly drawn, a motion to quash does not lie just because more than one statute provides a penalty for the same offense. The question of which statute applies to the defendant does not have to be answered until the need arises. Evidence might resolve or clarify the question. The question could conceivably arise during the trial on an evidentiary issue, but more than likely it would not confront the court unless there were a finding of guilty and a decision as to punishment were to become necessary. The trial judge was understandably concerned with the problem, but he need not have been on the threshold of the case.

The fact that the State maintained, in arguing the motions to quash, that the correct statute was section 9–92 of the Cities and Villages Act was inconsequential. It would have been equally inconsequential if the State had maintained that section 208 of the Criminal Code was the correct statute. Its viewpoint did not affect the content of the indictments. The State would not be concluded by the position it took, even if that position were wrong. It could change its position as the trial progressed or at the trial's conclusion, and if it did or did not it would make no difference. The court still would have to make its own determination at the proper time.

Such a determination was made at the end of the case in People v. Niewinski, 13 Ill. App. 2d 307, 142

43

N.E.2d 151. Two Chicago policemen were charged with the attempted extortion of a tavern keeper by threatening to accuse him of selling liquor to minors. The indictment was in two counts. Each alleged the same facts but count I charged the defendants with willful and corrupt oppression and count II with malconduct. Both of these offenses are included in section 9–92 of the Cities and Villages Act and section 208 of the Criminal Code, but neither statute was specified in either count. At the conclusion of the evidence the State dismissed count 1. The jury found the defendants guilty in manner and form as charged in the indictment. The State's position was that count II had been prosecuted under section 9–92. The defendants moved for arrest of judgment on the ground that the indictment on its face showed that the defendants were policemen and, therefore, were not subject to the provisions of section 9–92. The trial judge denied the motion and sentenced them under that section. The judgment of the court was affirmed.

In People v. Flynn, 375 Ill. 366, 31 N.E.2d 591, the determination was made in the Supreme Court. An indictment had been quashed which charged a mayor with the omission of duty. In its appeal the State said the indictment was based on section 208 of the Criminal Code. The Supreme Court disagreed with the State's view. The court held that it was the Cities and Villages Act which applied to mayors, and thereupon proceeded to discuss the merits of the case. The order sustaining the motion to strike was affirmed, but on other grounds.

The defendant's insistence that the indictments are laid under section 208 of the Criminal Code is in the belief that the offense charged against him comes within the exclusion of that section: " . . . where no special provision shall have been made for

44

the punishment thereof . . . ." Accordingly, he immediately insists that section 208 cannot apply because there are three special provisions for the punishment of the clerk for an omission of duty: (1) the power of the Municipal Court to punish its clerk for failure to perform his duties; (2) section 17 of chapter 25 which provides that if a clerk fails to keep a docket, record book or any book required by law to be kept, or to make proper entries therein, the court may fine him up to $100.00 and for a subsequent violation may fine or remove him from office, and (3) section 6–401 of chapter 95–½.

We shall discuss these contentions in the order named. (1) The general inherent power of the Municipal Court over its officers cannot be construed as a special statutory provision within the meaning of section 208. (2) Section 17 of chapter 25 refers to the requirements outlined in the section immediately preceding it and does not appear to embrace the obligation of section 13 to "preserve all the files and papers" of the court. At best, section 17 could pertain only to the indictments of the second category; it could not include the necessary reports to the Secretary of State which are the subject of the indictments of the first category. (3) Section 6–401 of chapter 95–½ could cover the indictments of the first category but not those of the second. This section must be read in connection with section 6–204(a)4 of chapter 6 of the Drivers License Act:

> "Failure to forward the reports of convictions as required by this Section [s.6–204] shall be deemed an omission of duty and it shall be the duty of the several State's Attorneys and the Attorney General to enforce the requirements of this Section." Ill. Rev. Stat., ch. 95–½, sec. 6–204 (a)4 (1959).

45

Section 6–401 states:

"(a) It is a misdemeanor for any person to violate any of the provisions of this Act. . . .

"(b) Unless another penalty is in this Act or by the laws of this State provided, every person convicted of a misdemeanor for the violation of this Chapter [ch. 6, Drivers License Act] shall be punished by a fine of not more than $300." Ill. Rev. Stat., ch. 95–½, sec. 6–401 (1959).

Section 6–401 (like section 208 of the Criminal Code) has its own exclusionary clause: "Unless another penalty is in this Act or by the laws of this State provided. . . ." Thus, there are two applicable statutes with similar clauses. It would be the responsibility of the trial judge to decide which statute should yield to the other, if the imposition of a penalty became necessary, and then only if he determined that section 9–92 of the Cities and Villages Act did not control. The defendant's contentions are premature. They have little to do with the sufficiency of the present indictments. His contentions may constitute a trial or a post-trial problem, but not a preliminary one.

This brings us to what we consider to be the crux of this case. This last point concerns the responsibility of the defendant for the acts of his subordinates.

▆ The defendant asks us to take judicial notice of the size of the Municipal Court Clerk's office, its many branches, its hundreds of employees and its millions of documents. The Municipal Court is part of our judicial system and we are aware of its magnitude and its volume of business. We recognize that the duties of the clerk in an office of this size are chiefly administrative and that he cannot be expected

to have detailed knowledge of each quasi-criminal complaint, of each mislaid file and of each conviction report which is supposed to be forwarded to the Secretary of State. We are further asked to take judicial notice of the impossibility of the defendant's having done the acts charged against him and to conclude that the indictments are fatally defective because they do not charge that he personally did them. While it may be improbable, it is not impossible for the defendant to have done the acts. Secondly, the indictments are not defective because the word "personally" is not used. The indictments charge the defendant with the offenses. They charge that *he* did them intentionally; that *he* did them knowingly and willfully. To charge that he personally did them would add nothing to the accusations.

We do not know what the State's evidence will be. But the briefs filed by the State indicate that it intends to rely not upon any knowledgeable or willful act on the part of the defendant, but solely on the vicarious relationship which those actually performing the work bear to him. If this is so is a court clerk, as the State maintains, criminally chargeable with acts performed by his subordinates in the course of their employment? Again, this is a question which normally should be answered by the trial court for it would arise only if there is no evidence of the defendant's participation in the acts. However, in order that so harsh an interpretation as the State seeks in this case may not become the erroneous basis of a conviction or serve as a precedent for future prosecutions, we are impelled to examine the question and to state our views thereon. We have given it careful consideration because if the State's views are maintained, great injustice could be done to a public official who administers a large public office, regardless of how conscientious and diligent he may be.

47

■ The criminal liability of a principal for the act of his agent must be distinguished from his civil liability for the same act. Under the common law there was no such doctrine as respondeat superior in criminal cases. Interestingly for us, the phrase respondeat superior appeared as early as 1285 in reference to public officials. In the Statute of Westminster 11 (13 Edw. I, St. 1, c.2, sec. 3, c.11, c.43, 1285) it was used in connection with the responsibility of an official for the misconduct of his assistants in the discharge of their public duties. The doctrine of respondeat superior was applied to tort cases and originally was limited to those in which the master ordered, authorized, approved or consented to the wrongful act of his servant. As the years went by the doctrine was expanded to include cases in which the servant had implied authority from his master. It was not until the 19th century that the doctrine developed further and a principal became liable for the tortious acts of his agent committed in the course of the latter's employment and within the scope of his authority. 43 Harvard Law Review 689.

No such evolution occurred in the criminal law. Under the common law a person could not be found guilty unless he committed a wrongful act himself or unless he counseled, abetted, incited or ordered another to do so. A principal was never held criminally liable for an offense committed (without his own participation in some form) by his agents during the course of their employment. A principal was answerable only for his own wrongdoings.

In general this concept of individual responsibility for criminal offenses and the distinction between civil and criminal liability has been substantially maintained. However, deviations have taken place through legislative enactments. In Metropolitan Ins.

Co. v. The People, 209 Ill. 42, 70 N.E. 643, the court spoke about some of these exceptions:

> "The general rule is . . . that a principal is not liable criminally for an act of his agent committed without express or implied authority; but there have always been well recognized exceptions to the rule, such as violations of the revenue laws, the creation or maintenance of nuisances or the publication of libels. Well recognized exceptions arise under police regulations prohibiting acts hurtful to the comfort, welfare and safety of society, such as the adulteration of food and drink, the sale of intoxicating liquor in violation of law, (Noecker v. People, 91 Ill. 494,) or a failure to stop a train at a railroad crossing. (Indianapolis and St. Louis Railroad Co. v. People, 91 Ill. 452.)"

■■ Under the common law a clerk of a court is not responsible for the criminal offenses of his deputies. The common law is the law of Illinois unless it has been altered by statute. 14 I.L.P. Criminal Law, sec. 3. This well established rule is succinctly stated in People v. Davis, 1 Ill. 2d 597, 116 N.E.2d 372: "It is axiomatic that in those areas where the common law applies the common law principles obtain unless they are expressly revoked." It is the State's position that the common law has been repealed by statute and it directs attention to section 10 of the Clerks of Courts Act [Ill. Rev. Stats. 1959, c. 25, § 10] which states: "The principal clerk shall in all cases be responsible for the acts of his deputies."

■■ Does the sweeping phrase "in all cases" refer to all civil cases, to all criminal cases or both? If it refers to all criminal cases is the clerk responsible for every misdeed of his deputies? If a deputy clerk

accepts a bribe is the clerk to be held for bribery? If a deputy steals part of the court costs can the clerk be charged with larceny? Man's innate sense of fairness would rebel at such injustice. What then does the phrase mean? Does it mean certain misdeeds and not others? Does it refer just to violations under the Clerk's Act or does it also include violations of other statutes as the State contends? If we try to apply the phrase to criminal cases its meaning becomes uncertain. It is susceptible of different interpretations and the Clerk's Act is of no aid in learning which application the legislature meant. Laws creating crimes should be so clear that all men may know what acts are proscribed and what conduct will make them liable to punishment. People v. Green, 368 Ill. 242, 13 N.E.2d 278. Usually a provision which imposes criminal liability for offenses committed by other persons is limited to the violations of the statute or act in which the provision appears. Contrast the imprecision of "The principal clerk shall in all cases be responsible for the acts of his deputies" with the explicit language of another statute which is in derogation of the common law, a statute which is in the courts day in and day out, section 3 of article X of the Liquor Control Act:

> "Every act or omission of whatsoever nature constituting a violation of any of the *provisions of this Act,* by any officer, director, manager, or other agent or employee of any licensee, shall be deemed and held to be the act of such employer or licensee, and said employer or licensee shall be punishable in the same manner as if said act or omission had been done or omitted by him personally." Ill. Rev. Stat., ch. 43, para. 185 (1959).

If a statute is intended to revoke the common law it should be free of ambiguity in that re-

50

gard. Section 10 of chapter 25 is not so clear that we can hold it creates indirect criminal liability. We believe section 10 makes the clerk civilly responsible for the acts of his deputies and makes him answerable to his own court for their acts; it does not make him responsible to the extent that he can be held criminally accountable for wrongful acts in which he has not taken part.

The quality of the proof required in this case is the same as in other criminal cases. The burden is upon the State to prove that the defendant either committed the acts charged in the indictments or that he caused, authorized, encouraged or abetted their commission.

The seven indictments are not defective. The motions to quash them should have been denied. The judgments of the Criminal Court are reversed and the cases remanded.

Reversed and remanded.

SCHWARTZ, P.J. and McCORMICK, J., concur.